

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| CHARLENE PELZER MAFFETT, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 3:19-cv-0832-MGL |
| | § | |
| CITY OF COLUMBIA, | § | |
| Defendant. | § | |
| | § | |

---

**ORDER ADOPTING THE REPORT AND RECOMMENDATION,**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS**
**TO PLAINTIFF'S FEDERAL CLAIMS, AND REMANDING PLAINTIFF'S**
**STATE-LAW CLAIM**

---

## I.    INTRODUCTION

Plaintiff Charlene Pelzer Maffett (Maffett) filed this lawsuit in the Richland County Court of Common Pleas against her former employer, Defendant City of Columbia (the City). The City subsequently removed the matter to this Court.

In Maffett's complaint, she alleges (1) interference under the Family Medical Leave Act (FMLA); (2) failure to accommodate in accordance with the American Disabilities Act (ADA); (3) retaliation as to both the FMLA and the ADA; and (4) a state-law-based claim for gross negligence.

Although Maffett's complaint labels her disability-related causes of action as having been brought under the ADA/Rehabilitation Act of 1973, the analysis for this case is the same under

1

either statutory scheme. *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995). Therefore, inasmuch as the parties typically cite to the ADA, the Court will, too.

The Court has federal question jurisdiction over Maffett's FMLA and ADA claims in accordance with 28 U.S.C. § 1331, and supplemental jurisdiction over her state-law claim under 28 U.S.C. § 1367.

The matter is before the Court for consideration of the Magistrate Judge's Report and Recommendation (Report) suggesting this Court (1) grant the City's motion for summary judgment as to Maffett's federal claims; and (2) remand Maffett's state-law claim to state court. The Magistrate Judge submits the Report in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Matthews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objections is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).


## II.    FACTUAL AND PROCEDURAL HISTORY

The Magistrate Judge filed the Report on April 19, 2021, Maffett filed her objections to the Report on June 2, 2021, and the City replied to the objections on July 7, 2021. The Court has reviewed the objections, but holds them to be without merit. It will therefore enter judgment accordingly.

The City employed Maffett as a Buyer in its Office of Purchasing and Contracting (Purchasing Office) from May 4, 2015, until October 13, 2017.  Maffett reported directly to Lawana Robinson-Lee (Lee), the Deputy Director of the Purchasing Department.

In May 2017, the Purchasing Office moved to a new location at 1800 Main Street in Columbia, South Carolina.  Maffett's ADA and FMLA claims arise from events that ensued after the Purchasing Office moved locations.

Maffett had a host of respiratory issues allegedly caused by toxins in the air at the new location.  After the City contracted for several remedial measures, the toxins were purportedly eradicated.

Here is a brief recitation of the relevant dates and incidents that are important in the Court's consideration of Maffett's federal claims:

| | |
|---|---|
| June 28, 2017 | After Maffett begins working at the 1800 Main Street location, she becomes ill inside her office.  She indicates she is unable to stop coughing and has trouble breathing.<br><br>She goes home but, after three hours, she wakes up coughing again.  After a trip to the emergency room, she is diagnosed with respiratory distress, provided breathing treatments and medications, and advised to stay out of the office for the rest of the week. |
| July 3, 2017 | Maffett returns to work, but begins experiencing a severe cough and trouble breathing. She is escorted to the City's health clinic, and a City physician contacts EMS to transport her to the emergency room. |
| July 6, 2017, | Maffett emails Lee, her supervisor, advising that she is due to return to the office the following Monday, July 10, 2017, and requests to "report to a different location on Monday morning at 7:30am for a safer work environment."  Lee is out of the office and forwards the request to Sandra Wright, the Director of the Purchasing Office (Wright). |

| July 7, 2017 | Wright texts Maffett and acknowledges her request to move to a different location for work the following Monday. July 7, 2017. But, Wright indicates, "We would prefer if you check with your doctor to see if you can get approved for another day out." Maffett responded she would be emailing Wright the doctor's excuse. |
|---|---|
| July 17, 2017 | After Maffett's appointment with her physician at Carolina Allergy and Asthma Consultants, she is provided with a Clinical Summary Letter that states Maffett's "[s]ymptoms have been triggered by [Maffett] being at work. She should remain out of work until remediation work has been completed and her work area thoroughly cleaned." |
| July 20, 2017 | Lee emails her employees stating that the City has excused leave from June 24 to July 7, 2017. |
| July 21, 2017 | Maffett sends an email to Lee requesting to take leave without pay for the pay period July 8-21, 2017. |
| July 23, 2017 | Maffett sends an email to Wright indicating she is feeling better. She requests to be allowed to work at another office until July 31, 2017. |
| | Wright responds Maffett was advised to wait until the doctor "completely releases [her] to return to work." Wright also indicates it was her understanding Maffett should report to the 1800 Main Street location when she felt she could return to work. Wright encourages Maffett not to "rush" herself to try and return to work too soon. Wright reminds Maffett she should check in each day. |
| August 3, 2017 | Maffett requests the air quality reports from Pamela R. Benjamin, Director of Human Resources for the City (Benjamin), Demitrius Rumph the City's Director of Safety and Risk Management (Rumph), and others at the City. |
| August 7, 2017 | The City's Human Resources Department advises Maffett she is eligible to apply for FMLA leave. |

| August 8, 2017 | Maffett's physician states in a report that Maffett should be able to return to work when the City provides an air quality report "if it is normal[.]" |
|---|---|
| August 8, 2017 | Rumph sends a letter to Maffett stating that "[t]he building at 1800 Main Street for the City of Columbia has been deemed a safe work environment for all employees."  In Rumph's deposition, however, he acknowledges he did not have access to Maffett's detailed medical information and had failed to consider her particular medical condition(s) or situation in indicating 1800 Main was "a safe work environment for all employees."  Rumph Dep. 41:2-14. |
| | In the letter, Rumph also advises Maffett that she will need to make a written request to the City's legal department for a copy of the Environmental Indoor air quality results. |
| August 9, 2017 | Maffett emails Lee asking for the air quality reports. |
| August 9, 2017 | In a letter to Maffett, Benjamin informs Maffett that her "request to work in another location has been denied because the City has fulfilled its responsibility to provide a safe work environment and [her] request will impact the work of your department." |
| | Benjamin also states the City is "not required" to provide copies of air quality results," but is willing to provide a letter outlining efforts and summarizing results for her to give to her medical provider. |
| | Benjamin also notes in the letter that Maffett is not on approved leave. |
| August 16, 2017 | Maffett submits her FMLA application and doctor's certification form.  On the form, Maffett's physician states Maffett's condition began June 28, 2017, and its "probable duration" is "until air quality study results show workplace air is within normal limits."  He indicates Maffett is unable to perform "all functions. She [cannot] be in the workplace."  In describing "relevant medical facts," he lists "asthma |

|  | exacerbations triggered by workplace exposure during/post construction." |
|---|---|
| August 18, 2017 | After the City received and processed Maffett's completed FMLA certification form, the City responded by letter, notifying her FMLA leave of absence had been approved, effective June 28, 2017, and noted that Maffett "expect[ed the leave] to continue until [her] doctor releases [her] to return to work, not to exceed 12 weeks or 480 hours." |
| August 23, 2017 | Benjamin emails Maffett that her FMLA had been approved effective June 28, 2017. Benjamin also advises Maffett to give Rumph's August 8, 2017, letter to her doctor, which details how to obtain air quality testing results. |
| September 18, 2017 | Maffett's attorney "writes [to] the City attorney . . . in an effort to get [Maffett] back to work and to provide clarity on [her] FMLA leave before the end date so [she] would know [her] employment status." Maffett's Affidavit ¶ 35. According to Maffett, "[n]o response was ever received[.]" *Id*. |
| September 25, 2017 | Wright emails to various people, including Maffett, a job posting for a Senior Buyer Position. |
| September-October 2017 | Maffett testifies she felt healthy enough to return to her job around the end of September 2017 or October. Maffett's Deposition at 106:12-14. She also agrees, by that time, she had "had it with them[]" and that she was not going to return to work. *Id*. at 107:10-12. |
| October 6, 2017 | Benjamin sends a letter to Maffett saying her twelve-week FMLA leave ended on September 22, 2017. Benjamin advises Maffett that, if Maffett fails to return to work by October 13, 2017, she will be considered to have resigned from the City. Thus, she effectively extends Maffett's FMLA leave from September 22, 2017, to October 13, 2017. |
| November 3, 2017 | Because Maffett failed to respond to the October 6, 2017, letter from Benjamin or return to work, the |

City sent a letter to Maffett that provided she was
officially separated from employment with the City.

## III.    DISCUSSION AND ANALYSIS

As a preliminary matter, the Court notes Maffett raises arguments and presents evidence to
the Court in her objections that she failed to raise and present to the Magistrate Judge.  The Court
will consider these things in its consideration of whether to grant the City's motion for summary
judgment.  *See United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992) ("[A]s part of its
obligation to determine de novo any issue to which proper objection is made, a district court is
required to consider all arguments directed to that issue, regardless of whether they were raised
before the magistrate.") (footnote omitted).

Maffett raises six objections to the Magistrate Judge's recommendation that the Court grant
the City's motion for summary judgment as to her federal claims.

### A.    *Whether Maffett failed to comply with Local Civil Rule 7.05(A)*

First, Maffett contends the Magistrate Judge erred in concluding Maffett failed to comply
with Local Civil Rule 7.05(A).  Under Rule 7.05(A)(4), when filing a memorandum opposing a
motion for summary judgment, the opposing party must provide a "concise statement of the
material facts in dispute with reference to the location in the record[.]" Local Civ. Rule 7.05(A)(4)
(D.S.C.).

Nonetheless, in the Report, she proceeds to analyze the merits of Maffett's claims, and
acknowledges when Maffett contends a genuine issue of material fact exists.  Consequently, in
assessing the merits of Maffett's remaining objections, the Court will consider Maffett's Statement
of Material Facts Supported by the Record to the extent the assertions are indeed supported by
evidence in the record.  Thus, because the Court is able to adjudicate the City's motion without

determining whether Maffett complied with Local Civil Rule 7.05(A)(4), the Court will overrule Maffett's first objection.

### B.    Whether the Magistrate Judge employed the correct standard of review

Second, Maffett argues the Magistrate Judge improperly made factual determinations on materially disputed issues in a light more favorable to the City. The Court has carefully reviewed the record, but is unable to agree. Therefore, the Court will also overrule this objection.

### C.    Whether Maffett established prejudice in her interference of the FMLA claim

In Maffett's third objection, she contends the Magistrate Judge erred in concluding Maffett failed to provide competent evidence to establish prejudice from the City's alleged interference with her FMLA benefit.

To make out an interference claim under the FMLA, Maffett must demonstrate (1) she is entitled to an FMLA benefit, (2) the City interfered with the provision of that benefit, and (3) the interference caused harm. *See Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015).

As the Magistrate Judge details in the Report, there is no dispute that Maffett is entitled to an FMLA benefit, and the City arguably interfered with the provision of that benefit. Report at 17. Thus, the only question for the Court to consider here is whether the City's alleged interference caused prejudice. *See Vannoy v. Fed'l Reserve Bank of Richmond*, 827 F.3d 296, 302 (4th Cir. 2016) ("The FMLA provides no relief unless the employee has been prejudiced by the violation.") (citation omitted) (internal quotation marks omitted). Consequently, if Maffett is unable to show prejudice, her FMLA interference claim must fail.

In attempting to show prejudice, Maffett argues she would have scheduled doctor's appointments differently and managed her paid leave differently. "Prejudice may be gleaned from

8

evidence that had the plaintiff received the required (but omitted) information regarding [her] FMLA rights, [she] would have structured [her] leave differently." *Id*.

As the Magistrate Judge observed, however, Maffett fails to "point to actual record evidence in support of her prejudice argument. Although her affidavit indicates that she could have scheduled doctor's appointments differently and managed her paid leave differently[,] she never explains what she means by that or how she suffered prejudice." Report at 18 (citing to Maffett's Affidavit ¶¶ ¶¶ 41, 42. And besides, according to Maffett's deposition testimony, Maffett testifies she was not healthy enough to return to work until around the end of September 2017 or October. Maffett's Deposition at 106:12-14. Thus, inasmuch as she was unable to return to work until around the same time her FMLA expired toward the end of September 2017, it is difficult to fathom how she would have structured her FMLA leave differently.

According to Maffett, she was also prejudiced when the City counted the excused leave, June 28 through July 7, 2017, against her FMLA leave. Maffett is correct in her assertion that the City erred in counting June 28 through July 7, 2017, towards Maffett's FMLA leave because the City excused her absences during this time. Improperly counting the excused time, Benjamin stated in her October 6, 2017, letter to Maffett that her twelve week FMLA leave had ended on September 22, 2017.

But, accounting for the excused time, Maffett's FMLA leave actually ended on September 29, 2017. Inasmuch as the City effectively extended Maffett's FMLA leave until October 13, 2017, however, Maffett has failed to show how she suffered prejudice due to this miscalculation.

Maffett also contends the City's redesignation of her FMLA time prejudiced her. This is in reference to the City's decision to redesignate her FMLA leave to commence on June 28, 2017, as opposed to her FMLA application date of August 16, 2017. June 28, 2017, is the date designated

by Maffett's doctor on Maffett's FMLA application as to when her condition commenced. Maffett maintains her FMLA leave should have not begun until after she submitted her FMLA application.

But, the FMLA regulations permit an employer to redesignate leave as FMLA leave so long as the employee is notified. And, the City's Employee Handbook informs its employees that FMLA leave "will run concurrently with any paid leave, i.e., sick leave, annual leave, or any other paid leaves for which the employee is eligible." Employee Handbook 45. Thus, as the Magistrate Judge suggests, Maffett fails to provide competent evidence that demonstrates redesignating her annual leave to FMLA leave amounted to prejudice.

In another attempt to show prejudice, Maffett relies on *Blankenship v. Buchanan General Hosp.*, 999 F. Supp. 832 (W.D. Va. 1998). In *Blankenship*, an employer retroactively designated its employee's FMLA leave to the employee's illness onset date and neglected to notify the employee until one month after the retroactive designation. *Id*. at 836. The district court denied the defendant's motion for summary judgment on this basis.

Maffett's reliance on *Blankenship* is misplaced, however, for at least two reasons. First, inasmuch as Blankenship is an opinion of another district court, its holding is not binding on this Court.

Second, the issue in *Blankenship* was that the employer neglected to provide notice of the retroactive designation for one month after the employee filed for her FMLA benefit, not that the employer retroactively designated the FMLA leave. *Id*.

Maffett submitted her FMLA certification form on or about August 16, 2017. In a letter dated August 18, 2017, just two days later, the City approved Maffett's leave and notified her of the redesignation. Accordingly, *Blankenship* is of no aid to Maffett.

10

Maffett also contends she was prejudiced because she was not "advised [that her FMLA leave would be retroactively designated until] almost three weeks after her submission [of her FMLA application] on or around August 7, 2017." Objections at 24. But, this is simply not so.

In Maffett's August 21, 2017, email on this issue, she writes that she had "submitted the FMLA documents to the [City] . . . last week and [was] waiting on a response." In other words, she says she submitted her FMLA application materials the week of August 14, 2017. The portion of the FMLA application that Maffett's doctor completed is dated August 15, 2017; and it appears it was received by the City on August 16, 2017.

So, she submitted her FMLA materials to the City on or about August 16 2021, not on or about August 7, 2017. In a letter dated August 18, 2017, just two days later, the City approved Maffett's leave and notified her of the redesignation. Benjamin followed up with an email to Maffett on August 23, 2017, stating that her FMLA had been approved effective June 28, 2017. In other words, the City advised Maffett that her FMLA leave would be retroactively designated two days after her submission, not almost three weeks later, as she incorrectly states in her objections.

Maffett contends she also suffered prejudice by "only having a handful of weeks to be on FMLA leave[,]" after being granted such leave. Objections at 23. As the Court noted above, Maffett was granted FMLA leave in a letter dated August 18, 2017. The letter stated her FMLA leave was effective on June 28, 2017, which was the illness onset date provided by her physician and would last for twelve weeks. As the Court has already noted, however, the City allowed Maffett until October 13, 2017, to return to work. Similar to Maffett's other arguments, the record lacks any evidentiary support demonstrating this subjected Maffett to prejudice.

Maffett also argues she suffered prejudice because Benjamin stated in a letter to her on August 9, 2017, that Maffett was not on FMLA leave.  This argument neglects to acknowledge, however, that Maffett failed to submit her FMLA paperwork until on or about August 16, 2017, and thus she was not on FMLA leave at the time Benjamin wrote the letter.  And, the record lacks any evidence demonstrating Maffett suffered prejudice because of Benjamin's letter.

Maffett further argues she was prejudiced by her alleged termination on September 25, 2017, the date the City posted a Senior Buyer job posting.  The job posting, however, was emailed to Maffett and several others, and was for a different position on a different pay scale than hers.  And, even after the City sent Maffett the job posting on September 25, 2017, the City advised Maffett she would be "considered as resigning from the City of Columbia" on October 13, 2017, if she failed to return to work.  Report at 22.

Another problem with Maffett's termination prejudice argument is her deposition testimony in which she agrees that, by the end of September 2017 or October, she had "had it with them[]" and that she was not going to return to work.  *Id*. at 107:10-12.  This was around the same time her FMLA expired.  Thus, she cannot be prejudiced by her alleged termination when she admits she decided to quit.

Maffett further contends she was constructively discharged, and that caused her prejudice.  Assuming that constructive discharge, if established, could demonstrate prejudice in the FMLA-interference context, Maffett has neglected to present evidence of constructive discharge.

To make out such a claim, the plaintiff must show "circumstances of discrimination so intolerable that a reasonable person would resign[.]"  *Green v. Brennan*, 136 S. Ct. 1769, 1779 (2016).  Thus, the Court "treat[s] the employee's resignation as though the employer actually fired him."  *Id.*  But, the law "do[es] not also require an employee to come forward with proof—proof

that would often be difficult to allege plausibly—that not only was the discrimination so bad that he had to quit, but also that his quitting was his employer's plan all along." *Id.* at 1779-80.

Here, Maffett argues that "[i]t is confounding to think that an objectively reasonable person would believe being subjected to a work environment where the ability to breathe was difficult and the employer refused to provide the reasonable person and her physician what should have been publicly disclosable reports in order for the reasonable person to be treated." Objections at 26-27.

The evidence in the record, however, contradicts Maffett's claim. In fact, evidence supported by the record indicates the City underwent numerous rounds of cleaning and air quality testing to provide a safe work environment for Maffett. It is unclear whether the City's implementation of cleaning recommendations would have helped Maffett's breathing, as it appears she failed to return to the office after the remediation efforts were completed.

And, although Maffett claims she "never was cleared to return to work by her physician because the City refused to provide the air quality reports to her[,]" Objections at 26 (citations omitted), Maffett never made a written request to the City's legal department for a copy of the air quality reports, as Rumph suggested she do in his August 8, 2017, letter. Nor did she ask Benjamin for a letter outlining efforts and summarizing results that Maffett could give to her medical provider, as Benjamin offered in her August 9, 2017, letter to Maffett.

Suffice it to say, Maffett was neither terminated nor constructively discharged. As the City observed, "Maffett did not communicate with Human Resources after she was informed that she needed to return to work by October 13, 2017, and she never attempted to return to work or to examine her cleaned-up workspace." Reply at 14. Thus, she is unable to show she was prejudiced

when the City, in its November 3, 2017, letter to Maffett, advised that she had been "officially separated from employment with the City."

Consequently, inasmuch as Maffett has failed to provide any competent evidence from which a reasonable juror could determine she experienced the requisite prejudice to establish an FMLA interference claim, the Court will overrule Maffett's third objection.

**D.** **Whether Maffett has established a prima-facie ADA failure-to-accommodate claim**

In Maffett's fourth objection, she contends the Magistrate Judge erred in concluding she failed to make out a prima-facie ADA failure-to-accommodate claim. To establish a prima facie case for failure to accommodate under the ADA, Maffett must show that "(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (internal modifications omitted). Only the third element is at issue here.

The plaintiff bears both (1) the burden of identifying an accommodation that would allow a qualified individual to perform the job, and (2) the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable. *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 197 (4th Cir.1997) (overruled on other grounds by *Baird v. Rose*, 192 F.3d 462 (4th Cir.1999). "A reasonable accommodation is one that is feasible or plausible." *Reyazuddin v. Montgomery Cnty., Md.*, 789 F.3d 407, 414 (4th Cir. 2015).

As an accommodation, Maffett asked to be allowed to work remotely. But, the City argues Maffett was unable to perform the essential functions of her job if she were not in the office; and therefore her request to work remotely was unreasonable. The City contends Maffett working

14

remotely would have "required other Buyers in the Purchasing Office to take on Maffett's workload in processing purchase orders and interacting with people coming into the Purchasing Office." Reply at 15.

Wright, Director of the Purchasing Office, testified that approximately ninety percent of Maffett's job required her to be in the office, such as processing purchase orders, which required the use of specialized printing equipment located only at the new location. Wright's Deposition at 60:3-61:25. And, had Maffett worked remotely, "she would have to have another buyer to handle part of her duties." *Id* 60:3-5. The City also notes that the "highly interactive nature of the Buyer position . . . required [Maffett's] presence in the Purchasing Office to process purchase orders and interact with vendors and other City personnel who came into the office." Reply at 15.

Maffett counters her request to work from home in July of 2017, was reasonable. Additionally, Maffett argues the City violated the ADA by not engaging in an interactive process to identify a reasonable accommodation.

But, an accommodation that requires other employees to work harder to perform the essential functions of the disabled employee is unreasonable. *See Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 687 (4th Cir. 1997) ("The ADA simply does not require an employer to hire an additional person to perform an essential function of a disabled employee's position."). Because the record establishes others would have had to work harder to allow Maffett to work remotely, Maffett is unable to show how working remotely was a reasonable accommodation.

And, although Maffett contends the City violated the ADA by not engaging in an interactive process, the Fourth Circuit has specifically noted "an employer will not be liable for failure to engage in the interactive process if the employee ultimately fails to demonstrate the existence of a reasonable accommodation that would allow her to perform the essential functions of the position."

*Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015). Thus, because Maffett failed to establish there was a reasonable accommodation, the City was not required to participate in an interactive process.

For these reasons, the Court will overrule this objection, too.

### E.     Whether Maffett has established a prima facie claim for retaliation under the FMLA and the ADA

In Maffett's fifth objection, she contends the Magistrate Judge erred in concluding she failed to make out a prima facie claim for retaliation under the FMLA and ADA.

To establish a prima facie case of retaliation under either statute, Maffett must show (1) she has engaged in conduct protected by the statute; (2) she suffered an adverse action subsequent to engaging in the protected conduct; and (3) there was a causal link between the protected activity and the adverse action. *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016) (FMLA); *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001) (ADA).

The parties agree on the first element: Maffett engaged in protected activity under the FMLA by requesting FMLA leave and under the ADA by seeking an accommodation. As to the second element, the adverse element, Maffett maintains that "the City failing to provide her with the air quality reports and terminating her employment[]" satisfy that requirement." Objections at 33-34 (footnote omitted).

According to Maffett, "[t]he City's failure to provide her with the air quality reports after she requested [them] prevented [Maffett] from returning to work and ultimately led to her termination or, alternatively, constructive discharge[] [inasmuch as Maffett's] treating physician never was able to clear her to return to work because the City refused to provide the air quality reports." *Id.* at 34.

The Supreme Court has defined an adverse employment action, as it relates to a retaliation claim, as something that "might have dissuaded a reasonable worker from engaging in protected conduct." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citation omitted) (internal quotation marks omitted).

As the Court has already discussed, Maffett has neglected to present any evidence she was either terminated or constructively discharged. And, she has failed to explain how the City's failure to give her the actual reports at the time she requested them was somehow an act that would have "dissuaded a reasonable worker" from making a claim under the FMLA or the ADA. *See id*. But that is what she must show to establish an adverse employment action. *See id*.

Further, she neglects to explain why she neither requested the air quality reports from the City's legal.department, as Rumph advised her to do in an August 8, 2017, letter to Maffett, nor ask for a summary of the air quality results, which Benjamin offered in her August 9, 2017, letter to Maffett.

In sum, Maffett has failed to establish the City undertook a materially adverse action against her. Thus, the Court will overrule this objection, as well.

### F.    *Whether the Court should remand Maffett's state claim*

For Maffett's sixth and final objection, assuming the Court rejects the Magistrate Judge's recommendation that the Court grant the City's motion for summary judgment on Maffett's federal claims, she contends her "claim for gross negligence under state law should remain in federal court to be tried along with Plaintiff's federal claims." But, given the Court's decision to grant the City's motion for summary judgment, the Court will overrule this objection, as well.

Maffett's objections span over thirty-five pages. The Court has carefully considered all of the arguments, and has discussed most of them.

17

The ones the Court has not addressed fall into one of two categories: (1) either the argument was discussed by the Magistrate Judge in the Report and, because the Court agrees with the Magistrate Judge's treatment of it there, the Court need not repeat the discussion here, or (2) the argument is so lacking in merit that it need not be analyzed.

## IV.    CONCLUSION

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules Maffett's objections, adopts the Report to the extent it does not contradict this order, and incorporates it herein.  Accordingly, it is the judgment of this Court the City's motion for summary judgment is **GRANTED** as to Maffett's federal claims; and her state-law gross negligence claim is **REMANDED** to the Richland County Court of Common Pleas.

**IT IS SO ORDERED.**

Signed this 17th day of September 2021, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE